BLOOD HURST & O'REARDON, LLP
TIMOTHY G. BLOOD (149343)
THOMAS J. O'REARDON II (247952)
JAMES M. DAVIS (301636)
501 West Broadway, Suite 1490
San Diego, CA 92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
toreardon@bholaw.com
jdavis@bholaw.com

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – EUREKA DIVISION

| | |
|---|---|
| MARIE KOBUS, NIESHA LEWIS, MARY DEVANEY SHERENGO, ERNELL VANCE, and NICOLE DAVIS, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | |
| THE PROCTER & GAMBLE COMPANY, a Delaware corporation, | |
| Defendant. | |
| | **JURY TRIAL DEMANDED** |

BLOOD HURST & O' REARDON, LLP

00222426

Plaintiffs Marie Kobus, Niesha Lewis, Mary Devaney Sherengo, Ernell Vance, and Nicole Davis, by and through their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge, against The Procter & Gamble Company ("Defendant" or "P&G").

## NATURE OF THE ACTION

1.      Retinol is a vitamin A derivative widely used as an ingredient in cosmetic topical skin applications (creams, gels, serums) for its potential anti-aging properties. Retinol as an ingredient in cosmetic skincare is widely understood by the consuming public to have these properties and is purchased by consumers to reduce the appearance of fine lines and wrinkles, fade dark spots on skin, prevent premature aging, and to generally maintain healthy skin. Retinol, however, takes time to work. It must undergo a complex biological conversion to its active form, retinoic acid, in the skin in order to impart these effects. To have any impact, retinol-containing products require long-term, consistent exposure to the skin that is repeated daily. Otherwise, these products confer none of the suggested benefits of retinol. While consumers widely understand the potential benefits associated with retinol, they are largely unaware of the biological processes required to achieve these benefits.

2.      P&G exploits consumers' perception of retinol's benefits and their lack of knowledge about how retinol works by deceptively advertising and selling an array of retinol facial and skin cleansers that purport to deliver the commonly understood dermatologic benefits of retinol—but are rinsed off right away, therefore minimizing their contact time with the target organ, in this case the skin. These cleansers are intended to be used like soap: applied and then washed off. Washing off retinol within seconds after application means the retinol will not and cannot provide the advertised benefits. Further, retinol is a relatively unstable chemical. It must be properly packaged, shipped, and stored, otherwise it loses its efficacy. P&G does not properly package, ship or store the subject retinol products. As a result, by the time a consumer purchases the subject products, the retinol is no longer active. The retinol containing rinse-off cleansers do not provide the skincare benefits associated with topically applied vitamin A.

BLOOD HURST & O' REARDON, LLP

00222426

1

CLASS ACTION COMPLAINT

3. The retinol products at issue include: "Cleaning & Renewing Body Wash with Retinol" (the "Retinol Body Wash"); "Nighttime Rinse-off Body Conditioner with Retinol" (the "Retinol Rinse-Off Conditioner"); "Smoothing Daily Facial Cleanser Retinol 24 + Peptide" (the "Retinol Facial Cleanser"); "Renewing Exfoliating Cleanser with Retinol" (the "Retinol Exfoliating Cleanser"); and "Cleansing Melts + Retinol" (the "Retinol Cleansing Melts") (collectively, the "Retinol Rinse-Off Cleansers").

4. P&G's advertising claims about the promised benefits of its Retinol Rinse-Off Cleansers are deceptive and misleading. The retinol in the Retinol Rinse-Off Cleansers does not work as advertised and does not provide the advertised benefits.

5. Plaintiffs seek, among other relief, damages, restitution, and injunctive relief on behalf of themselves and a class defined as:

> All persons within the United States who purchased one or more Retinol Rinse-Off Cleansers from the beginning of the applicable limitations period until the date notice is provided to the Class (the "Nationwide Class" or the "Class").

6. Alternatively, Plaintiffs bring this action on behalf of themselves and the following classes defined as:

**Multistate Consumer Protection Act Class**: All persons who purchased one or more Retinol Cleanser in the States of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Texas, Washington, and Wisconsin for personal consumption from the beginning of any applicable limitations period through the date of class certification.

**New York Subclass**: All persons who purchased one or more Retinol Cleanser in the State of New York from the beginning of any applicable limitations period until the date notice is provided to the Class.

**California Subclass**: All persons who purchased one or more Retinol Cleanser in the State of California from the beginning of any applicable limitations period until the date notice is provided to the Class.

**Illinois Subclass:** All persons who purchased one or more Retinol Cleanser in the State of Illinois from the beginning of any applicable limitations period until the date notice is provided to the Class.

**Florida Subclass:** All persons who purchased one or more Retinol Cleanser in the State of Florida from the beginning of any applicable limitations period until the date notice is provided to the Class.

BLOOD HURST & O' REARDON, LLP

00222426

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendant.

8.      This Court has personal jurisdiction over Defendant because Defendant conducts business in California. Defendant has marketed, advertised, distributed, and sold Retinol Rinse-Off Cleansers in California, rendering exercise of jurisdiction by California courts permissible.

9.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff Marie Kobus purchased the subject products in this District and Defendant does business throughout this District.

10.     Pursuant to Civil Local Rule 3-2(c), a substantial part of the events giving rise to the claims brought herein occurred in Lake County, California. Consequently, assignment to the Eureka Division is appropriate.

**PARTIES**

11.     Plaintiff Marie Kobus is a resident of the State of California. While residing in Clearlake, California, Plaintiff Kobus was exposed to and saw the subject advertising message by reading the Retinol Facial Cleanser and Retinol Body Wash labeling and packaging. In reliance on the advertising message that the Retinol Facial Cleanser and Retinol Body Wash contained retinol and would confer the benefits of retinol, Plaintiff Kobus purchased the Retinol Facial Cleanser and Retinol Body Wash a total of twelve times, paying between approximately $10 and $15 at Rite Aid and Wal-Mart in Clearlake, California, between the middle of 2022 and December 2022. By purchasing the deceptively advertised Retinol Facial Cleanser and Retinol Body Wash, Plaintiff Kobus suffered injury-in-fact and lost money. The Retinol Facial Cleanser and Retinol Body Wash, like the other Retinol Rinse-Off Cleansers, do not provide the benefits of retinol. Had Plaintiff Kobus known the truth about P&G's misrepresentations and omissions at the time of her purchases, Plaintiff Kobus would not have purchased either the Retinol Facial Cleanser or the Retinol Body Wash or would have paid less for them.

BLOOD HURST & O' REARDON, LLP

00222426

12.     Plaintiff Niesha Lewis was at the relevant time a resident of the State of California but is now a resident of Nevada. While residing in San Diego, California, Plaintiff Lewis was exposed to and saw the subject advertising message by reading the Retinol Facial Cleanser labeling and packaging. In reliance on the advertising message that the Retinol Facial Cleanser contained retinol and would confer the benefits of retinol, Plaintiff Lewis purchased the Retinol Facial Cleanser for approximately $10 in San Diego, California, at a CVS store in early 2022. By purchasing the deceptively advertised Retinol Facial Cleanser, Plaintiff Lewis suffered injury-in-fact and lost money. The Retinol Facial Cleanser, like the other Retinol Rinse-Off Cleansers, does not provide the benefits of retinol. Had Plaintiff Lewis known the truth about P&G's misrepresentations and omissions at the time of her purchases, Plaintiff Lewis would not have purchased the Retinol Facial Cleanser or would have paid less for it.

13.     Plaintiff Nicole Davis is a resident of the State of Illinois. While residing in Homewood, Illinois, Plaintiff Davis was exposed to and saw the subject advertising message by reading the Retinol Body Wash labeling and packaging. In reliance on the advertising message that the Retinol Body Wash contained retinol and would confer the benefits of retinol, Plaintiff Davis purchased the Retinol Body Wash approximately six times, paying between approximately $15 at Meijer and Walmart in Belleville, Illinois, in the middle of 2024. By purchasing the deceptively advertised Retinol Body Wash, Plaintiff Davis suffered injury-in-fact and lost money. The Retinol Body Wash, like the other Retinol Rinse-Off Cleansers, does not provide the advertised benefits of retinol. Had Plaintiff Davis known the truth about P&G's misrepresentations and omissions at the time of her purchases, Plaintiff Davis would not have purchased the Retinol Body wash or would have paid less for it.

14.     Plaintiff Mary Devaney Sherengo is a resident of the State of New York. While residing in New York City, New York, Plaintiff Sherengo was exposed to and saw the subject advertising message by reading the Retinol Facial Cleanser labeling and packaging. In reliance on the advertising message that the Retinol Facial Cleanser contained retinol and would confer the benefits of retinol, Plaintiff Sherengo purchased the Retinol Facial Cleanser for between approximately $10 to $15 on Amazon in late 2024. By purchasing the deceptively advertised Retinol

Facial Cleanser, Plaintiff Sherengo suffered injury-in-fact and lost money. The Retinol Facial Cleanser, like the other Retinol Rinse-Off Cleansers, does not provide the benefits of retinol. Had Plaintiff Sherengo known the truth about P&G's misrepresentations and omissions at the time of her purchases, Plaintiff Sherengo would not have purchased the Retinol Facial Cleanser or would have paid less for it.

15.    Plaintiff Ernell Vance is a resident of the State of Florida. While residing in Fort Lauderdale, Florida, Plaintiff Vance was exposed to and saw the subject advertising message by reading the Retinol Facial Cleanser and Retinol Body Wash labeling and packaging. In reliance on the representation that the Retinol Facial Cleanser and Retinol Body Wash contained retinol and would confer the benefits of retinol, Plaintiff Vance purchased the Retinol Facial Cleanser and Retinol Body Wash each for between approximately $10 to $15 at Target around July 2024. By purchasing the deceptively advertised Retinol Facial Cleanser and Retinol Body Wash, Plaintiff Vance suffered injury-in-fact and lost money. The Retinol Facial Cleanser and Retinol Body Wash, like the other Retinol Rinse-Off Cleansers, do not provide the benefits of retinol. Had Plaintiff Vance known the truth about P&G's misrepresentations and omissions at the time of her purchases, Plaintiff Vance would not have purchased the Retinol Facial Cleanser and Retinol Body Wash or would have paid less for them.

16.    On January 22, 2025, Plaintiffs provided notice and made demand to P&G informing it that the Retinol Rinse-Off Cleansers did not perform as advertised as alleged herein and demanded, among other relief, refunds on behalf of themselves and the Class. A true and correct copy of that correspondence is attached as **Exhibit A.**

17.    Defendant P&G is a corporation organized under the laws of the State of Delaware, with its principal place of business located at One Procter & Gamble Plaza, Cincinnati, Ohio 45202. P&G is a multinational consumer goods corporation known for its extensive portfolio of brands across various personal care, health, and household product categories. P&G manufactures, advertises, markets, distributes, and sells the Retinol Rinse-Off Cleansers under its Olay skincare brand.

BLOOD HURST & O' REARDON, LLP

00222426

**FACTUAL ALLEGATIONS**

***Background on Retinoids, Including Tretinoin and Retinol***

18.     Retinol is a type of retinoid. Retinoids are a class of chemical compounds that are derivatives of vitamin A.

19.     In the human body, retinol is the primary form of vitamin A that circulates in the bloodstream, and retinoic acid is its most biologically active form. The vitamin is stored in the liver as retinyl esters, which can be converted back to retinol and released into the bloodstream when needed.

20.     The synthetic version of biologically active retinoic acid is known as tretinoin and is only available by prescription. Tretinoin binds to and activates specific retinoic acid (RAR) and retinoid-X (RXR) receptors inside skin cells.[1] This process can influence gene expression, protein production, and skin cell development.[2]

21.     The common side effects of tretinoin—such as dryness, peeling, redness, and itching (known as the "retinoid reaction")[3]—underscore its potency and the biological processes required for its activity. Evidence shows that tretinoin influences collagen synthesis, fibroblast activity, and the inhibition of matrix metalloproteinases—enzymes that break down proteins like collagen found in the spaces between cells.[4] Tretinoin is FDA-approved under various brand names[5] for treating facial acne and as an anti-aging treatment, underscoring its powerful effects and specific mechanisms of action.

22.     Retinol derivatives, which are not classified as drugs, are commonly found in over-the-counter ("OTC") "cosmeceutical" products. Skincare companies selling OTC retinol products have long claimed that retinol has antiaging effects and improves skin texture, combats hyperpigmentation, reduces dryness, and lessens or eliminates fine lines in the skin.[6] OTC retinols

---

[1]     Milosheska, et al., *Use of Retinoids in Topical Antiaging Treatments: A Focused Review of Clinical Evidence for Conventional and Nanoformulations*, Adv Ther. 2022 Dec;39(12):5351-5375.
[2]     *Id.*
[3]     *Id.*
[4]     *Id.*
[5]     Common brand names include Altreno, Atralin, Obagi, Retin-A, Tretin-X, and Ziana.
[6]     *See, e.g.,* https://www.olay.com/olay-retinol-24-night-

BLOOD HURST & O' REARDON, LLP

are commonly sold in creams, gels, lotions, ointments and serums.

23.    Unlike FDA-approved tretinoin, retinols—which are twenty times less potent than tretinoin[7]—require a series of complex enzymatic steps in the body, including oxidation and hydroxylation, to convert into active retinoic acid.[8] This intricate process underscores the biological hurdles involved in achieving any meaningful effect from retinol.



24.    This conversion process—essential for efficacy—requires time. For topical retinol to work, it must remain on the skin long enough to permeate the stratum corneum (the outermost layer of the skin, often referred to as the "skin barrier") and undergo the conversion process to retinoic acid. Only then can the retinoic acid bind to the RAR and RXR nuclear receptors in the cell nucleus to regulate gene expression and produce its effects. The process takes hours and must be repeated, usually daily, to have any effect. The process does not and cannot work if retinol is applied to the skin and then rinsed off soon after because the retinol does not have sufficient contact with the skin to be absorbed.

25.    RAR and RXR nuclear receptors, which are necessary for retinoic acid to work, are found primarily in keratinocytes—the living skin cells located in the deeper layers of the epidermis. However, the stratum corneum, the outermost layer of skin that body wash contacts, is made up of dead skin cells called corneocytes. Corneocytes lack nuclei and therefore do not have the receptors needed for retinoic acid to bind or function. This means that for retinol in a body or face wash to be effective it must be in contact with the skin long enough to penetrate beneath the stratum corneum

---

moisturizer?srsltid=AfmBOorBM2A5HctcQGfNujtV5F0NiGgiwo9jwu7BrF4nry89O4axFdxL (webpage for Olay Retinol24 Night Moisturizer, which P&G claims "visibly improves fine lines & wrinkles; dark spots; elasticity; the look of pores.").

[7]    Kang S, Duell EA, Fisher GJ, et al. *Application of retinol to human skin in vivo induces epidermal hyperplasia and cellular retinoid binding proteins characteristic of retinoic acid but without measurable retinoic acid levels or irritation*. J Invest Dermatol. 1995;105(4):549–556.

[8]    Riahi RR, et al. *Topical retinoids: therapeutic mechanisms in the treatment of photodamaged skin*. Am J Clin Dermatol. 2016;17(3): 265–76.

BLOOD HURST & O' REARDON, LLP

00222426

to reach living cells—a process that cannot occur during the brief time the Retinol Rinse-Off Cleansers have contact with the skin.

26.     Even prescription tretinoin (synthetic active retinoic acid), which bypasses the complex conversion process of retinyl esters → retinol → retinaldehyde → retinoic acid, comes with specific application guidelines. Users are advised to "avoid washing the skin treated with tretinoin for at least 1 hour after applying it."[9]

27.     Retinol's instability further limits its effectiveness. Exposure to heat, light, and trace metals accelerates its decomposition,[10] and its efficacy can only be preserved under strict conditions: controlled atmospheric conditions, storage in aluminum tubes, and an environment below 68 degrees Fahrenheit. The Retinol Rinse-Off Cleansers are not shipped or stored on retail stores at the proper temperature and Defendant packages them in plastic containers, not aluminum.

***P&G Falsely Markets the Retinol Rinse-Off Cleansers as Conferring the Skincare Benefits of Retinol***

28.     The Retinol Rinse-Off Cleansers are sold through various third-party retailers, including Target, Albertsons, Walgreens, CVS, and Amazon, among others. P&G also sells Retinol Rinse-Off Cleansers through its website.

29.     As shown in the images below, P&G prominently labels all the Retinol Rinse-Off Cleansers with the word "Retinol," and lists retinol among the ingredients.

---

[9]     *See*    FDA    label    for    RENOVA®    (tretinoin    cream    0.05%), https://www.accessdata.fda.gov/drugsatfda_docs/label/2000/19963S5,7LBL.PDF

[10]     SCCS (Scientific Committee on Consumer Safety), revision of the scientific Opinion (SCCS/1576/16) on vitamin A (Retinol, Retinyl Acetate, Retinyl Palmitate), preliminary version of 10 December 2021, final version of 24-25 October 2022, SCCS/1639/21, https://health.ec.europa.eu/system/files/2023-08/sccs_o_261.pdf

*The Retinol Body Wash*



30.    "+ RETINOL" is prominently placed on the front of the Retinol Body Wash packaging. On the back of the Retinol Body Wash, P&G claims that "[o]ur advanced formula, infused with Retinol and Vitamin B3 Complex, penetrates skin's surface with moisture overnight so you can wake up to renewed, youthful looking skin." Additional claims include: "Replenishes Skin's Moisture Barrier" and "Vibrant Skin Overnight."

31.    "Retinol" and "Retinyl Propionate" are listed as ingredients.

32.    The directions for use state "Use nightly. Lather with puff and rinse."

33.    Consistent with the product packaging, P&G's webpage for the Retinol Body Wash includes the following claims:

BLOOD HURST & O' REARDON, LLP

00222426

BLOOD HURST & O' REARDON, LLP

1
2
3
4

Lather in luxury every single night. Olay Cleansing and Renewing Body Wash, infused with skin care ingredients, pampers skin with rich and creamy lather. Use our luxe formula every night and wake up to experience softer and more radiant skin. Infused with Retinol and Vitamin B3 Complex, this hydrating body wash revitalizes and quenches thirsty skin. Shower yourself in Olay's 60 years of beauty science for hydrated, healthy-looking skin from head to toe.[11]

5
6

34.    P&G's webpage for the Retinol Body Wash also claims the skin benefits are supported by scientific proof, claiming: "Healthier Looking Skin in 14 days* *vs No Treatment."[12]

7
8
9

35.    P&G's webpage for the Retinol Body Wash also has a section titled "RETINOID COMPLEX," found under the "Ingredients" section, which repeats and reinforces the skin benefit claims:

10

**RETINOID COMPLEX**

11
12
13

Olay's secret skin superpower. Our proprietary formula works to transform your skin leaving you with smoother and brighter in 24 hours. In just 4 weeks, you'll also notice visible improvements of fine lines, wrinkles and dark spots plus you'll see it evens skin tone and minimizes the appearance of pores. Mission accomplished.

14
15

Indulge in our nighttime premium body wash, formulated with skin care ingredients, which moisturizes to renew your skin while you sleep.[13]

16
17
18
19
20
21
22
23
24
25
26
27
28

---

[11]    https://www.olay.com/cleansing-renewing-nighttime-body-wash?srsltid=AfmBOoptwlL3OEI9j_Ipzema1nAAgm-y6fRx6GxHCGZkjL8LrpYyLUJP
[12]    *Id.*
[13]    *Id.*

*The Retinol Rinse-Off Conditioner*





36.    "+ RETINOL" is prominently placed on the front of the Retinol Rinse-Off Conditioner. On the back of the Retinol Rinse-Off Conditioner, P&G claims that it is "made with Retinol and Vitamin B3 Complex," which "infuses skin with concentrated moisture overnight to help stop dry skin before it starts."

37.    The directions for Retinol Rinse-Off Conditioner state: "Use nightly. After cleansing as usual."

38.    "RETINOL" and "RETINYL PROPIONATE" are listed as ingredients.

BLOOD HURST & O' REARDON, LLP

00222426

BLOOD HURST & O' REARDON, LLP

*The Retinol Facial Cleanser*



39.     "SMOOTHING" and "RETINOL" are prominently placed on the front of the Retinol Facial Cleanser packaging. On the back, the Retinol Facial Cleanser has the following language: "Smoothing Facial Cleanser" and "Cleans & Nourishes Skin's Surface." The directions state: "apply product to wet or dry face and neck. Gently massage product and rinse with clean water. (For more effective makeup removal, apply to dry face.)" "Retinol" is listed as an ingredient.

40.     Consistent with the product packaging, on P&G's webpage for the Retinol Facial Cleanser, under a section titled "WHAT IT DOES," P&G states:

**RETINOL FORMULA**
This face wash, formulated with Retinol, Niacinamide (Vitamin B3), and Peptides, hydrates while cleaning for soft, smooth skin.[14]

**FRESH REVEAL**
You will instantly experience clean skin, perfectly prepared for the rest of your skincare routine. Within 1 week, you'll reveal soft, smooth skin. Within 1 month, when used with Olay moisturizers, you'll experience a noticeable skin transformation.[15]

41.     P&G's webpage also contains an area with the title "Retinoid Complex"

---

[14]     https://www.olay.com/products/smoothing-daily-facial-cleanser-with-retinol?queryID=5982af8bf93d904c9a023cdcbdf52727
[15]     *Id.*

CLASS ACTION COMPLAINT

accompanied by the following language:

> Our powerful proprietary formula works overnight, leaving you with smoother and brighter skin in just 24 hours. This exfoliating ingredient targets visible improvements in fine lines, wrinkles, dark spots, skin tone, and pores.[16]

### The Retinol Exfoliating Cleanser



42.    "[W]ith RETINOL" is featured prominently on the front of the Retinol Exfoliating Cleanser. The "Directions" state "Wet Face. Gently massage product over face. Rinse. Follow with an Olay Moisturizer."

43.    "Retinol" is listed among the ingredients.

44.    Consistent with the product packaging, on P&G's webpage for the Retinol Exfoliating Cleanser, P&G claims that it will "Smooth [sic] or Evens Texture."[17] Under a section titled "WHAT IT DOES," P&G also repeats the purported skincare benefits of retinol:

> Are you getting the most out of your retinol? We've designed this creamy Olay Retinol 24 Facial Cleanser to prep your skin for Retinol24 products. retinol. The gentle exfoliators smooth your skin's surface while our Vitamin B3+ Retinoid complex renews your skin. Before using other Retinol 24 products, massage this product onto your face and rinse well. We've made this cleanser without fragrance, parabens, phthalates, mineral oil, or synthetic dyes so you can get the most out of

---

[16]    *Id.*
[17]    https://www.olay.com/olay-renewing-exfoliating-cleanser-with-retinol?srsltid=AfmBOorWKgXVmyaVkcVvEIw-upNF75RZv1kIePFgDhU8TJJHZAKMczgm

Blood Hurst & O' Reardon, LLP

your skin care.[18]

45.     Under a section on P&G's webpage for the Retinol Exfoliating Cleanser titled "SKIN TYPE & CONCERNS," P&G repeats that Retinol Exfoliating Cleanser provides fine line and wrinkle benefits:

> **Skin Concerns**
>
> • Fine Lines & Wrinkles, Dullness, Visible Pores.[19]

46.     Consistent with the product packaging, the P&G webpage for the Retinol Exfoliating Cleanser also contains a "Retinoid Complex" section materially identical to the one on P&G's webpage for the Retinol Cleanser, which repeats and reinforces the skin benefit claims:

**RETINOID COMPLEX**

Our powerful proprietary formula works overnight, leaving you with smoother and brighter skin in just 24 hours. This exfoliating ingredient targets visible improvements in fine lines, wrinkles, dark spots, skin tone, and pores.[20]

*The Retinol Cleansing Melts*



---

[18]    *Id.*
[19]    *Id.*
[20]    *Id.*

47.    "+ RETINOL" is prominently displayed on the front of the Retinol Cleaning Melts packaging, and "RETINOL*" and "*Retinol" are listed among the ingredients.

48.    On April 1, 2021, P&G issued a press release announcing the Retinol Body Wash in which it repeated the purported scientifically proven, superior skin benefits provided by its "super ingredient retinol":

> The Cleansing & Renewing Body Care Duo was inspired by Olay's skincare line and is infused with super ingredient retinol. The Retinol Body Wash improves skin 3X better than the leading body wash* and transforms skin from dry and stressed to bright and smooth.
>
> …
>
> *based on 12-day clinical moisture retention data.[21]

49.    However, none of the Retinol Rinse-Off Cleansers can provide the skincare benefits associated with retinol. By design and according to the products' directions for use, each Retinol Rinse-Off Cleanser is washed off the skin with water soon after it is applied, preventing any meaningful interaction with the skin.

50.    As a result, there is insufficient contact time with the skin for any retinol that may be in the Retinol Rinse-Off Cleansers to penetrate the stratum corneum and undergo the biological conversion process from retinyl esters to retinoic acid. At most, any retinol would only contact the corneocytes, the dead skin cells that lack the RAR and RXR nuclear receptors necessary for retinoic acid to bind and function.

51.    Further, to be effective, retinol application must be frequently repeated and left on the skin. The effects of properly applied retinol takes weeks—if not months. Even when retinol is properly applied and left on the skin for 24 hours—far longer than the time even topical retinol is typically left on skin—very little retinol permeates the stratum corneum to reach keratinocytes.[22]

---

[21]    P&G, *Olay Body Debuts Its Biggest and Most Innovative Product Bundle with Three New Premium Collections*, April 1, 2021, https://news.pg.com/news-releases/news-details/2021/Olay-Body-Debuts-Its-Biggest-and-Most-Innovative-Product-Bundle-with-Three-New-Premium-Collections/
[22]    *Supra*, n.10.

BLOOD HURST & O' REARDON, LLP

00222426

1    Rinsing off retinol from the skin simply washes it off, and does not allow it to remain on the skin

2    for a prolonged time period.[23]

3        52.    The prices of the Retinol Rinse-Off Cleansers are higher because they are marketed

4    as providing the benefits of retinol. However, because all potentially active retinol (if there is any)

5    in the Retinol Rinse-Off Cleansers is washed away, they do not provide the advertised benefits.

6    Further, because of product container, storage and shipping requirements that are not followed, the

7    Retinol Rinse-Off Cleansers do not provide the advertised benefits.

8                      **CLASS ACTION ALLEGATIONS**

9        53.    Plaintiffs incorporate by reference all other paragraphs of this Complaint as if fully

10   set forth herein.

11       54.    Plaintiffs bring this action individually and on behalf of all other persons similarly

12   situated pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may depend on the

13   information obtained through discovery. Notwithstanding, at this time, Plaintiffs bring this action

14   and seeks certification of the following Class:

15       All persons within the United States who purchased one or more Retinol Rinse-Off
         Cleansers from the beginning of the applicable limitations period until the date notice
16       is provided to the Class (the "Nationwide Class" or the "Class").

17       55.    Alternatively, Plaintiffs bring this action on behalf of themselves and the following

18   classes defined as:

19       **Multistate Consumer Protection Act Class**: All persons who purchased one or more
         Retinol Cleanser in the States of California, Florida, Illinois, Massachusetts, Michigan,
20       Minnesota, Missouri, New Hampshire, New Jersey, New York, Rhode Island, Texas,
         Washington, and Wisconsin for personal consumption from the beginning of any applicable
21       limitations period through the date of class certification.

22       **New York Subclass**: All persons who purchased one or more Retinol Cleanser in the State
         of New York from the beginning of any applicable limitations period until the date notice is
23       provided to the Class.

24       **California Subclass**: All persons who purchased one or more Retinol Cleanser in the State
         of California from the beginning of any applicable limitations period until the date notice is
25       provided to the Class.

26       **Illinois Subclass**: All persons who purchased one or more Retinol Cleanser in the State of
27       Illinois from the beginning of any applicable limitations period until the date notice is

28   ───────────────
     [23]    *Supra*, n.10.

BLOOD HURST & O' REARDON, LLP

provided to the Class.

**Florida Subclass**: All persons who purchased one or more Retinol Cleanser in the State of Florida from the beginning of any applicable limitations period until the date notice is provided to the Class.

Excluded from the Class are the Defendant, its parents, subsidiaries, affiliates, officers, and directors; those who purchased Retinol Rinse-Off Cleansers for the purpose of resale; all persons who make a timely election to be excluded from the Class; the judge to whom this case is assigned and any immediate family members thereof.

56.    The number of Class members is so numerous that the joinder of individual Class members is impracticable. The precise number of Class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors, among other methods.

57.    Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include, but are not limited to:

a.    The advertising message conveyed by the product packaging and reinforced by other marketing and advertising;

b.    Whether the advertising claim conveyed by the product packaging and reinforced by other marketing and advertising is deceptive;

c.    Whether the Retinol Rinse-Off Cleansers confer the advertised skincare benefits;

d.    Whether Plaintiffs and Class members were damaged by P&G's conduct or entitled to restitution and the amount of damages or restitution; and

e.    Whether Plaintiffs and Class members are entitled to injunctive relief.

58.    The claims of the named Plaintiffs are typical of the claims of the Class because the named Plaintiffs have the same claims and were exposed to the same advertising message about the Retinol Rinse-Off Cleansers, purchased the Retinol Rinse-Off Cleansers, and suffered a loss as a

BLOOD HURST & O' REARDON, LLP

00222426

result of that purchase.

59.    Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

60.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members. Individual litigation is not economically feasible given the complex and relatively costly litigation necessary to establish Defendant's liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties, levels the playing field between litigants, is economically feasible and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Violation of State Consumer Protection Acts
### (On Behalf of the Multistate Consumer Protection Act Class)

61.    Plaintiffs hereby incorporate by reference and re-allege each and every allegation set forth as though fully set forth herein.

62.    The Consumer Protection Acts of the states in the Multistate Consumer Protection Act Class all prohibit false and deceptive advertising of consumer goods.[24]

---

[24]    The states in the Multistate Consumer Protection Act Class are limited to those states with similar consumer protection acts under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq*., Cal. Civ. Code § 1750, *et seq*.); Florida (Fla. Stat. § 501.201 *et seq*.); Illinois (815 ILCS 505/2, *et seq*.), Massachusetts (Mass. Gen. Laws Ch. 93Am *et seq*.); Michigan (Mich. Comp. Laws § 445.901, *et seq*.); Minnesota (Minn. Stat. § 325F.68, *et seq*.); Missouri (Mo. Rev. Stat. § 407.010, *et seq*.); New Hampshire (N.H. Rev. Stat. § 358-A:1); New Jersey (N.J. Stat. § 56:9-1, *et seq*.); New York (N.Y. Gen. Bus. Law §§ 349, 350 *et seq*.); Rhode Island (R.I. Gen. L. Ch. 6-13.1); Texas (Tex. Bus. & Com. Code § 17.41, *et seq.*); Washington (Wash. Rev. Code § 19.86010, *et seq*.); and Wisconsin (WIS. STAT. § 100.18, *et seq*.).

63.    Plaintiffs and the other members of the Multistate Consumer Protection Act Class have standing to pursue a cause of action for violation of the Consumer Protection Acts of the states in the Consumer Protection Multistate Class because Plaintiffs and members of the Consumer Protection Multistate Class have all suffered an injury in fact and lost money as a result of Defendant's actions set forth herein.

64.    Defendant engaged in false and deceptive advertising of the Retinol Rinse-Off Cleansers.

65.    Defendant intended that Plaintiffs and each of the other members of the Consumer Protection Multistate Class would rely on the advertising claim at issue and that a reasonable person would be misled by this deceptive conduct described above.

66.    Defendant's conduct, described above, in misrepresenting and omitting material facts regarding the Retinol Rinse-Off Cleansers constitutes an unfair or deceptive practice and was and is likely to mislead reasonable consumers, as detailed above.

67.    As a result of Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Consumer Protection Multistate Class have paid money they should not have paid as a result of Defendant's acts and omissions in an amount to be proven at trial.

68.    Defendant's conduct was fraudulent, malicious, and in reckless disregard of the truth.

## COUNT II

**Deceptive Acts or Practices, New York Gen. Bus. Law § 349**
**(By Plaintiff Sherengo on Behalf of the New York Subclass)**

69.    Plaintiff Sherengo incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

70.    Plaintiff Sherengo brings this claim individually and on behalf of members of the New York Subclass against Defendant.

71.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making false representations on the packaging of the Retinol Rinse-Off Cleansers.

72.    The foregoing deceptive acts and practices were directed at consumers.

BLOOD HURST & O' REARDON, LLP

00222426

73.    The foregoing deceptive acts and practices are misleading in a material way as alleged herein.

74.    Plaintiff Sherengo and members of the New York Subclass were injured as a result because (a) they would not have purchased the Retinol Rinse-Off Cleansers if they had known that the Retinol Rinse-Off Cleansers were ineffective at conferring the theoretical skincare benefits of topical retinol, or (b) they overpaid for the Retinol Rinse-Off Cleansers on account of the alleged acts and omissions.

75.    On behalf of Plaintiff Sherengo and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover their actual damages or fifty dollars for each Retinol Cleanser purchase, whichever is greater, three times actual damages, punitive damages, reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 349 of the New York General Business Law.

### COUNT III

**False Advertising, New York Gen. Bus. Law § 350**
**(By Plaintiff Sherengo on Behalf of the New York Subclass)**

76.    Plaintiff Sherengo incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

77.    Plaintiff Sherengo bring this claim individually and on behalf of members of the New York Subclass against Defendant.

78.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of the New York General Business Law by engaging in the acts and omissions alleged.

79.    The foregoing advertising was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

80.    This misrepresentation has resulted in consumer injury or harm to the public interest.

81.    As a result of this misrepresentation, Plaintiff Sherengo and members of the New York Subclass have suffered economic injury because (a) they would not have purchased the Retinol

BLOOD HURST & O' REARDON, LLP

00222426

Rinse-Off Cleansers or paid less had they known that the Retinol Rinse-Off Cleansers were ineffective at conferring the theoretical benefits of topical retinol, and (b) they overpaid for the Retinol Rinse-Off Cleansers on account of the misrepresentation that they are effective at conferring the theoretical benefits of topical retinol.

82.     On behalf of themselves and other members of the New York Subclass, Plaintiff Sherengo seek to enjoin the unlawful acts and practices described herein, to recover their actual damages or five hundred dollars for each Retinol Cleanser purchase, whichever is greater, three times actual damages, punitive damages, and reasonable attorneys' fees and costs, and an order enjoining Defendant's deceptive conduct, and any other just and proper relief available under Section 350 of the New York General Business Law.

## COUNT IV

### Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*
### (By Plaintiffs Lewis and Kobus on Behalf of the California Subclass)

83.     Plaintiffs Lewis and Kobus incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

84.     The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq*. ("UCL"), prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising. In the course of conducting business, Defendant committed unlawful business practices by, among other things, making the representations (which also constitutes advertising within the meaning of section 17200) and omissions of material facts, as set forth more fully herein, and violating Civil Code §§ 1572, 1573, 1709, 1711, 1770(a)(5), (7), (9) and (16); Cal. Business & Professions Code § 17200, *et seq.*, § 17500, *et seq.*; and the common law.

85.     Plaintiffs Lewis and Kobus, individually and on behalf of the other California Subclass members, reserve the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

86.     In the course of conducting business, Defendant committed "unfair" business practices by, among other things, making the representations (which also constitute advertising within the meaning of section 17200) and omissions of material facts regarding the Retinol Rinse-

BLOOD HURST & O' REARDON, LLP

Off Cleansers as alleged herein. There is no societal benefit from false advertising; only harm. Plaintiffs Lewis and Kobus and other California Subclass members would not have purchase or would have paid less for the Retinol Products than they would have had they known the truth about the Retinol Rinse-Off Cleansers. As a result, Defendant's conduct is "unfair," as it offended an established public policy. Further, Defendant engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

87.    Further, as set forth in this Complaint, Plaintiffs Lewis and Kobus allege violations of consumer protection, unfair competition, and truth in advertising laws in California, resulting in harm to consumers. Defendant's acts and omissions also violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Cal. Business & Professions Code § 17200, *et seq*.

88.    There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Cal. Business & Professions Code § 17200, *et seq*., also prohibit any "fraudulent business act or practice." In the course of conducting business, Defendant committed "fraudulent business act or practices" by, among other things, making the representations (which also constitute advertising within the meaning of section 17200) and omissions of material facts regarding the Retinol Rinse-Off Cleansers in its advertising campaign, as set forth more fully herein.

89.    Defendant's actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Cal. Bus. & Prof. Code § 17200, *et seq*.

90.    Plaintiffs Lewis and Kobus and the other California Subclass members have in fact been deceived as a result of their reliance on Defendant's material representations and omissions, which are described above. This reliance has caused harm to Plaintiffs and the other California Subclass members, each of whom purchased the Retinol Rinse-Off Cleansers. Plaintiffs and the other Class members have suffered injury in fact and lost money as a result of purchasing the products and Defendant's unlawful, unfair, and fraudulent practices.

91.     Defendant knew, or should have known, that its material representations and omissions would be likely to deceive the consuming public and result in consumers purchasing Retinol Rinse-Off Cleansers and, indeed, intended to deceive consumers.

92.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate.

93.     Plaintiffs lack an adequate remedy at law. For example, CLRA damages may be calculated under a benefit-of-the-bargain methodology while UCL restitution may be calculated under a price premium or full refund theory, which could yield different results.

94.     Plaintiffs Lewis and Kobus on behalf of themselves, all others similarly situated, and the general public, seek restitution from Defendant of all money obtained from Plaintiff and the other members of the California Subclass collected as a result of unfair competition, an injunction prohibiting Defendant from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## <u>COUNT V</u>

**The California Consumers Legal Remedies Act, Cal. Civ. Code § 1750,** *et seq.*
**(By Plaintiffs Lewis and Kobus on Behalf of the California Subclass)**

95.     Plaintiffs Lewis and Kobus incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

96.     This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA"). Plaintiffs Lewis and Kobus are consumers as defined by California Civil Code section 1761(d). The Retinol Rinse-Off Cleansers are "goods" within the meaning of the CLRA.

97.     Defendant violated and continues to violate the CLRA by engaging in the following practices proscribed by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of the Retinol Rinse-Off Cleansers:

(5)     Representing that [the Retinol Rinse-Off Cleaners have] . . . approval, characteristics, . . . uses [and] benefits . . . which [they do] not have . . . .

*       *       *

BLOOD HURST & O' REARDON, LLP

CLASS ACTION COMPLAINT

00222426

(7)    Representing that [the Retinol Rinse-Off Cleaners are] of a particular standard, quality or grade . . . if [they are] of another.

\*        \*        \*

(9)    Advertising goods . . . with intent not to sell them as advertised.

\*        \*        \*

(16)    Representing that [the Retinol Rinse-Off Cleaners ] have been supplied in accordance with a previous representation when [they have] not.

98.    Defendant violated the CLRA by representing and failing to disclose material facts on its Retinol Rinse-Off Cleansers' labeling and associated advertising, as described above, when it knew, or should have known, that the representations were false and misleading and that the omissions were of material facts they were obligated to disclose.

99.    Pursuant to California Civil Code section 1782(d), Plaintiffs Lewis and Kobus, individually and on behalf of the other members of the California Subclass, seek a Court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement and all other relief this Court deems proper.

100.    Pursuant to California Civil Code section 1782(a), Defendant was notified in writing by certified mail of the particular violations of section 1770 of the CLRA, which notification demanded that Defendant rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to so act. A copy of the letter is attached hereto as **Exhibit A**.

101.    If Defendant fails to rectify or agree to rectify the problems associated with the action above and give notice to all affected consumers within 30 days of the date of written notice pursuant to section 1782 of the CLRA, Plaintiffs will amend this complaint to add claims for actual, punitive and statutory damages.

102.    Pursuant to section 1780(d) of the CLRA, attached hereto as **Exhibit B** is the affidavit showing that this action has been commenced in the proper forum.

/ / /

/ / /

## COUNT VI

**Violation of the Florida Deceptive and Unfair Trade Practices Act**
**Fla. Stat. § 501.201, *et seq.***

**(By Plaintiff Vance On Behalf of the Florida Subclass)**

103.    Plaintiff Vance hereby incorporates by reference and re-alleges each and every allegation set forth as though fully set forth herein.

104.    Plaintiff Vance brings this action pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq*. ("FDUPTA"). The stated purpose of FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

105.    Plaintiff Vance is a consumer as defined by Fla. Stat. § 501.203. The Retinol Rinse-Off Cleansers are goods within the meaning of FDUTPA. Defendant is engaged in trade or commerce within the meaning of FDUTPA.

106.    Florida Statute section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FDUTPA also prohibits false and misleading advertising.

107.    Defendant's unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably in the circumstances and violate Fla. Stat. § 500.04.

108.    Defendant has violated FDUTPA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous and substantially injurious to consumers.

109.    Plaintiff Vance and members of the Florida Subclass have been aggrieved by Defendant's unfair and deceptive practices and acts of false advertising because they paid for the Retinol Rinse-Off Cleansers.

110.    The harm suffered by Plaintiff Vance and the Florida Subclass were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as more fully described herein.

BLOOD HURST & O' REARDON, LLP

00222426

111.    Pursuant to Fla. Stat. § 501.211(1), Plaintiff Vance and members of the Florida Subclass seek an order for restitution, disgorgement, and damages.

112.    Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff Vance and Class members make claims for damages, attorneys' fees and costs.

## COUNT VII

### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2

### (By Plaintiff Davis On Behalf of the Illinois Subclass)

113.    Plaintiff Davis hereby incorporates by reference and re-alleges each and every allegation set forth as though fully set forth herein.

114.    The Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/2 ("ICFA"), prohibits unfair methods of competition and unfair or deceptive acts or practices, including, but not limited to, the use or employment of any deception, fraud, false pretense, false promise, or misrepresentation in the conduct of any trade or commerce.

115.    Plaintiff Davis and members of the Illinois Subclass are consumers who purchased the Retinol Rinse-Off Cleansers.

116.    Defendant's deceptive conduct occurred in the course of engaging in trade or commerce.

117.    Defendant's conduct, described above, in misrepresenting and omitting material facts regarding the Retinol Rinse-Off Cleansers constitutes an unfair or deceptive practice and was and is likely to mislead reasonable consumers, as detailed above.

118.    A reasonable consumer would consider the promise of receiving something other than as promised to be important when making a decision to purchase a Retinol Rinse-Off Cleanser.

119.    Defendant's practices were unfair because they offended public policy, were immoral, unethical, oppressive, and unscrupulous, and caused substantial injury to consumers.

120.    Defendant's unfair and deceptive acts or practices were the foreseeable and actual cause of Plaintiff Davis and other members of the Illinois Subclass suffering actual damages on

27

BLOOD HURST & O' REARDON, LLP

00222426

account of receiving a product that was not as advertised.

121.    Plaintiff Davis and the other Illinois Subclass members paid for a product in accordance with Defendant's representations. When they received a product that was not in conformity with those representations and their reasonable expectations, Plaintiff Davis and the other Illinois Subclass members were damaged on account of purchasing and receiving the Retinol Rinse-Off Cleansers that were other than as advertised.

122.    Plaintiff Davis and the other Illinois Subclass members make claims for damages, punitive damages, attorneys' fees and costs pursuant to 815 ILCS 505/10a. Additionally, Plaintiff Davis and the other Illinois Subclass members seek an order enjoining Defendant from continuing its false and deceptive conduct.

## <u>COUNT VIII</u>

### Unjust Enrichment

### (On Behalf of the Nationwide Class)

123.    Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

124.    Plaintiffs bring this claim individually and on behalf of members the Nationwide Class.

125.    Plaintiffs and Class members conferred benefits on Defendant by purchasing the Retinol Rinse-Off Cleansers.

126.    Defendant has knowledge of such benefits.

127.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Retinol Rinse-Off Cleansers. Retention of that money under these circumstances is unjust and inequitable because Defendant misrepresented that the Retinol Rinse-Off Cleansers confer many, if not the same, theoretical benefits of OTC topical retinol products.

128.    Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

BLOOD HURST & O' REARDON, LLP

00222426

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant as follows:

A.    For an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Class and appointing Plaintiffs' attorneys as Class Counsel to represent the Class;

B.    For an order declaring that Defendant's conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiffs and the Class on all causes of action asserted herein;

D.    For compensatory, statutory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.    For an order of restitution and all other applicable forms of equitable monetary relief;

F.    For an order enjoining Defendant from engaging in the unlawful conduct described herein;

G.    For prejudgment interest on all amounts awarded; and

H.    For an order awarding Plaintiffs and the members of the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all claims so triable.

Respectfully submitted,

Dated: January 22, 2025                BLOOD HURST & O'REARDON, LLP
                                       TIMOTHY G. BLOOD (149343)
                                       THOMAS J. O'REARDON II (247952)
                                       JAMES M. DAVIS (301636)


By:        s/  Timothy G. Blood
                                       TIMOTHY G. BLOOD

                                       501 West Broadway, Suite 1490
                                       San Diego, CA  92101
                                       Tel: 619/338-1100
                                       619/338-1101 (fax)

BLOOD HURST & O' REARDON, LLP

00222426

tblood@bholaw.com
toreardon@bholaw.com
jdavis@bholaw.com

*Attorneys for Plaintiffs*

BLOOD HURST & O' REARDON, LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

00222426

CLASS ACTION COMPLAINT